Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL II

| | | |
|---|---|---|
| JULIO SANTIAGO DE ALBA<br><br>Apelante<br><br>v.<br><br>ALBERTO HERNÁNDEZ RIVERA Y OTROS<br><br>Apelados | KLAN202300716 | *APELACIÓN* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso número: SJ2023CV03902<br><br>Sobre: *Injunction* (Entredicho Provisional, *Injunction* Preliminar y Permanente) |

Panel integrado por su presidente, el juez Bermúdez Torres, el juez Adames Soto y la juez Aldebol Mora.

Aldebol Mora, Juez Ponente

# SENTENCIA

En San Juan, Puerto Rico, a 19 de marzo de 2024.

Comparece la parte apelante, Julio Santiago de Alba, y nos solicita que revoquemos la *Sentencia* emitida y notificada por el Tribunal de Primera Instancia, Sala Superior de San Juan, el 13 de julio de 2023. Mediante dicho dictamen, el foro primario declaró No Ha Lugar la solicitud de *injunction* estatutario promovida por el apelante. En consecuencia, desestimó y archivó la acción de epígrafe.

Por los fundamentos que exponemos a continuación, se confirma el dictamen apelado.

**I**

El 2 de mayo de 2023, Julio Santiago de Alba (Santiago de Alba o apelante) incoó una *Demanda* sobre interdicto estatutario al amparo del Artículo 14.1 de la Ley Núm. 161-2009, conocida como la *Ley para la Reforma del Proceso de Permisos de Puerto Rico*, según enmendada, 23 LPRA sec. 9024 (Ley Núm. 161-2009), en contra de Alberto Hernández

Número identificador

SEN2024_____

Rivera (Hernández Rivera o apelado).[1] En esencia, alegó que su vecino inmediato, Hernández Rivera, construyó en la propiedad de este una extensión al balcón en concreto armado y bloques, hasta la colindancia de la parte izquierda de su propiedad. Arguyó que Hernández Rivera construyó, además, un salón familiar en concreto armado y bloques en el patio lateral derecho de este, invadiendo su patio lateral izquierdo. Ello, según adujo, en violación a la Sección 6.1.3.4 del *Reglamento Conjunto para la Evaluación y Expedición de Permisos Relacionados al Desarrollo, Uso de Terrenos y Operación de Negocios*, Reglamento Núm. 9233 de 2 de diciembre de 2020 (Reglamento Conjunto de 2020); en la alternativa, en violación a la Sección 19.3.3 del *Reglamento Conjunto de Permisos para Obras de Construcción y Usos de Terrenos*, Reglamento Núm. 7951 de 30 de noviembre de 2010 (Reglamento Conjunto de 2010). Asimismo, señaló que Hernández Rivera había construido una estructura en bloques en el patio posterior de la propiedad de este, sin contar con los permisos requeridos para ello.

Santiago de Alba planteó en su petitorio que sus intereses propietarios se veían directamente afectados por la perturbación causada por las estructuras ilegales antes descritas que Hernández Rivera mantenía en su propiedad, en menosprecio a las leyes y reglamentos de planificación aplicables. Argumentó que las construcciones que mantenía Hernández Rivera en la propiedad de este le afectaban adversamente, pues no podía disfrutar de su derecho fundamental a la intimidad en su propiedad y tampoco podía disfrutar de esta a plenitud. De igual forma, reiteró que dicha construcción requería un permiso del Municipio Autónomo de San Juan, el cual no había sido obtenido por Hernández Rivera. En virtud de ello, solicitó que se ordenara la paralización o demolición de la construcción en cuestión.

---

[1] Anejo 2 del recurso, págs. 21-26.

Por su parte, el 17 de mayo de 2023, Hernández Rivera presentó su alegación responsiva.[2] En esencia, negó las alegaciones en su contra y alegó que su propiedad no colindaba con el inmueble de Santiago de Alba, sino que su lateral izquierdo se encontraba en contraposición con el lateral derecho de la propiedad de este último. Según adujo, cuando adquirió su propiedad, el 11 de enero de 1999, la extensión del balcón ya estaba construida, detalle que Santiago de Alba conocía al adquirir la propiedad de este en el año 1997. Indicó que, para el año 2018, luego de haber radicado una querella ante la Oficina de Permisos del Municipio Autónomo de San Juan, la mencionada agencia emitió una *Resolución* el 10 de noviembre de 2021, mediante la cual aprobó y autorizó la consulta de construcción solicitada para legalizar las obras objeto del presente pleito. Informó que, eventualmente, Santiago de Alba presentó una revisión judicial –con designación alfanumérica KLRA202200187– de dicha determinación ante el Tribunal de Apelaciones, el cual emitió un dictamen revocando la decisión administrativa por estar fundamentada en el Reglamento Conjunto de 2020, el cual había sido declarado nulo por otros paneles de este Foro apelativo.

Hernández Rivera especificó que dicha revocación no había ocurrido en los méritos de la variación y autorización concedida de la construcción en controversia, sino por la nulidad del referido Reglamento. También particularizó que, de haber aplicado el Reglamento Conjunto de 2010, la decisión de la agencia hubiera sido la misma. De otro lado, indicó que la controversia sobre la nulidad del Reglamento Conjunto de 2020 estaba ante la consideración del Tribunal Supremo de Puerto Rico, luego de que este confirmara una determinación recurrida declarando la nulidad del citado Reglamento mediante *Opinión* en *FCPR v. ELA et al.*, 2023 TSPR 26, 211 DPR __ (2023), cuya reconsideración estaba pendiente de adjudicación.

---

[2] Anejo 5 del recurso, págs. 37-46.

En cuanto a la alegación sobre la construcción de una estructura en bloque en el patio posterior, Hernández Rivera sostuvo que había decidido demolerla. Igualmente, arguyó que la construcción del salón familiar se realizó al otro lado de su propiedad, por lo que no afectaba en absoluto a Santiago de Alba. Por otro lado, argumentó que el Artículo 14.1 de la Ley Núm. 161-2009, *supra*, no era el vehículo legal adecuado para atender la controversia de autos. Según planteó, el remedio adecuado era la radicación de una querella ante el Municipio Autónomo de San Juan. En vista de lo anterior, solicitó al foro *a quo* analizar la totalidad de las circunstancias y realizar un balance de intereses entre todos los factores esbozados en su *Contestación a la Demanda*.

Luego de varios trámites procesales, el 15 de junio de 2023, se celebró una vista evidenciaria.[3] En esta, las partes estipularon varios documentos e informaron que no presentarían prueba testimonial. Además, aclararon que la extensión del balcón era la controversia medular del caso, toda vez que Hernández Rivera demolería la estructura del patio y el salón familiar estaba ubicado en el lado contrario a la residencia de Santiago de Alba.

Al día siguiente, el foro primario emitió y notificó una *Resolución*.[4] Mediante dicho dictamen, informó que nuestro Tribunal Supremo había emitido una *Opinión Per Curiam* en *Martínez Fernández et al. v. OGP et al.*, 2023 TSPR 75, 212 DPR ___ (2023), en la cual declaró la nulidad del *Reglamento Conjunto para la Evaluación y Expedición de Permisos Relacionados al Desarrollo, Uso de Terrenos y Operación de Negocios*, Reglamento Núm. 9081 de 8 de mayo de 2019 (Reglamento Conjunto de 2019) y del Reglamento Conjunto de 2020. Señaló que, en vista del nuevo ordenamiento jurídico, le correspondía determinar en el caso de autos si la consulta de construcción, promovida por Hernández Rivera e impugnada por Santiago de Alba, fue autorizada con anterioridad a la nulidad del

---

[3] Anejo 12 del recurso, págs. 151-153.
[4] Anejo 14 del recurso, págs. 168-170.

Reglamento Conjunto de 2019 y el Reglamento Conjunto de 2020, por lo que esa nulidad no le aplicaría. A su vez, indicó que debía resolver si la determinación de nuestro más Alto Foro, en cuanto a que ningún permiso autorizado y expedido al amparo del Reglamento Conjunto de 2019 y el Reglamento Conjunto de 2020 era inválido por estas regulaciones haber sido declaradas nulas, implicaba que el procedimiento especial de epígrafe, a tenor con el Artículo 14.1 de la Ley Núm. 161-2019, *supra*, se había tornado académico. En vista de ello, ordenó a Santiago de Alba a mostrar causa por la cual no debía desestimar el caso por academicidad.

El 27 de junio de 2023, Santiago de Alba presentó una *Moción en Cumplimiento de Orden*.[5] En síntesis, señaló que el Tribunal Supremo de Puerto Rico resolvió en *Martínez Fernández et al. v. OGP et al.*, supra, que ningún permiso autorizado y expedido al amparo de los citados Reglamentos era inválido por la declaración de nulidad de estos. No obstante, arguyó que, en el caso de autos, Hernández Rivera no tuvo un permiso de construcción autorizado, sino que solo contaba con una consulta de construcción que el Tribunal de Apelaciones había revocado. Indicó que el recurso de revisión (KLRA202200187) presentado ante el Foro revisor intermedio advino final y firme, sin ser apelado, por lo que se convirtió en la ley del caso. Sobre ese particular, sostuvo que la realidad jurídica ante dicha determinación era que Hernández Rivera no contaba con el permiso necesario para las construcciones ilegales que mantenía en su propiedad, las cuales eran objeto del presente pleito.

Por otro lado, Santiago de Alba alegó que la acción de epígrafe al amparo del precitado Artículo 14.1 de la Ley Núm. 161-2019, *supra*, perseguía el claro propósito de detener y hasta demoler construcciones sin permiso, como las que mantenía Hernández Rivera en su propiedad, por lo que era el mecanismo indicado para el presente caso. En cuanto al argumento de Hernández Rivera sobre que las construcciones en su propiedad existían desde antes de que Santiago de Alba adquiriera su

---

[5] Anejo 17 del recurso, págs. 176-184.

inmueble, sostuvo que las obras fueron construidas de forma ilegal, independientemente de cuándo se construyeron. Abundó que dichas construcciones no guardaban las distancias requeridas según la reglamentación aplicable, lo cual afectaba su derecho a la intimidad, la ventilación y las luces, todo ello en contravención del derecho constitucional que le asistía al libre disfrute de su propiedad. Argumentó que quien construía obras sin permiso que violaban de forma crasa las disposiciones reglamentarias que regían los parámetros de construcción en un distrito residencial intermedio, infligía daño, lo cual le impedía solicitar variaciones y al Municipio concederlas. Por todo lo anterior, solicitó que se declarara con lugar la demanda de epígrafe y se ordenara la demolición inmediata de las obras de construcción que, de manera ilegal, Hernández Rivera tenía en su propiedad.

En respuesta, el 12 de julio de 2023, Hernández Rivera replicó.[6] Esencialmente, planteó que lo resuelto en *Martínez Fernández et al. v. OGP et al.*, supra, no tenía efecto alguno en el presente caso porque no estábamos ante un permiso de construcción, sino ante una autorización para legalizar la construcción de un balcón que no fue realizada por este. Detalló que, al nuestro Tribunal Supremo declarar la nulidad prospectiva del Reglamento Conjunto de 2019 y del Reglamento Conjunto de 2020, todo lo aprobado con anterioridad al citado dictamen mantenía su validez. Añadió que ello tenía el efecto de la improcedencia del recurso interdictal, ya que no se trataba de obras que no contaban con permiso de construcción, pues ello nunca se obtuvo, sino que el Tribunal de Apelaciones revocó la aprobada "consulta de construcción" cuyo propósito fue la legalización de las obras. Afirmó que, ante tal determinación de nuestro más Alto Foro, nada le impedía que reviviera la determinación de la Oficina de Permisos del Municipio Autónomo de San Juan. Por ello, reiteró que el recurso interdictal era improcedente en ese momento, ya que

---

[6] Anejo 22 del recurso, págs. 220-232.

incumplía con los requisitos del mencionado Artículo 14.1 de la Ley Núm. 161-2009, *supra*.

De otro lado, Hernández Rivera alegó que el fundamento de la decisión del Tribunal de Apelaciones en el KLRA202200187 estuvo únicamente sostenido en la nulidad del Reglamento Conjunto de 2020, pues dicho Foro no entró a dilucidar los méritos de la concesión de la legalización de la construcción. Según adujo, en casos de esta naturaleza, la consulta de construcción aprobada es el elemento principal, toda vez que el permiso de construcción sobre algo que ya estaba construido surtía efecto en el pago de los arbitrios correspondientes. A su vez, informó que había instado una nueva petición de legalización de las mencionadas obras ante el Municipio Autónomo de San Juan y que Santiago de Alba había intervenido en ese nuevo proceso; es decir, que había un reclamo ante la consideración del tribunal de instancia y otro ante el foro administrativo. En vista de ello, sostuvo que procedía la desestimación sin perjuicio de la acción interdictal para darle paso al cause administrativo cónsono con la doctrina de jurisdicción primaria.

Evaluadas las posturas de las partes, el 13 de julio de 2023, el Tribunal de Primera Instancia emitió y notificó la *Sentencia* que nos ocupa, mediante la cual declaró No Ha Lugar la solicitud de *injunction* estatuario promovida por Santiago de Alba, en virtud del Artículo 14.1 de la Ley Núm. 161-2009, *supra*.[7] En consecuencia, ordenó la desestimación y el archivo sin perjuicio de la acción de epígrafe. En dicho dictamen, desglosó las siguientes determinaciones de hechos:

1) Las partes son vecinos residenciales en la Urb. Country Club, en una zona calificada Residencial Intermedio (R-I).

2) El lateral izquierdo de la propiedad de la parte demandada se encuentra en contraposición con el lateral derecho de la propiedad [de Santiago de Alba].

3) [Hernández Rivera] adquirió su propiedad inmueble de residencia unifamiliar mediante la Escritura [N]úmero 1 sobre Compraventa y Asumiendo Hipoteca[,] otorgada el 11 de enero de 1999.

---

[7] Anejo 1 del recurso, págs. 1-20.

4) Para el año 2018, [Santiago de Alba] presentó una querella ante la Oficina de Permisos del Municipio [Autónomo] de San Juan con relación a ciertas construcciones en la propiedad de [Hernández Rivera].

5) Las construcciones existentes actualmente en la propiedad de [Hernández Rivera,] y que son objeto de controversia entre las partes[,] son aquellas sobre las cuales se solicitó su legalización en el caso ante el Municipio Autónomo de San Juan, [C]aso [Núm.] 2018-234771-CCO-004717.

6) Estas obras que se propusieron legalizar consisten en la ampliación del balcón en el patio lateral izquierdo, la construcción de un "family" con área de lavandería en el patio posterior, y la construcción de un edificio accesorio en el patio posterior.

7) El 10 de noviembre de 2021[,] la Oficina de Permisos del Municipio Autónomo de San Juan, emitió una notificación firmada por la señora Damaris Damiani Rivera, Gerente [del] Área de Secretar[í]a, con la que se acompañó [una] Resolución mediante la cual se autorizó la preparación de planos finales para las obras y estructuras en la propiedad de [Hernández Rivera], según propuestas.

8) Tras aquilatar la querella que presentó [Santiago de Alba], el Municipio de [Autónomo] San Juan concluyó en dicha Resolución que la variación aplicable al balcón ampliado era mínima; y que la referente al "family" era una variación que no afectaba la propiedad colindante y no ocupaba la servidumbre.

9) Ante ello, el Municipio [Autónomo] de San Juan aprobó el plano de la consulta de construcción sometido por [Hernández Rivera] y autorizó la preparación de los planos finales para las obras y estructuras del balcón y del "family"[,] según propuestas y conforme a las recomendaciones y requerimientos establecidos en dicha [R]esolución.

10) No obstante, el Municipio [Autónomo] de San Juan concluyó que se debía demoler la estructura accesoria que se encontraba en el patio posterior sobre la servidumbre [de] la Autoridad de Energía Eléctrica.

11) El 3 de marzo de 2022, el Departamento de Desarrollo Económico y Comercio, Oficina de Gerencia de Permisos[,] emitió una Resolución de Revisión Administrativa, sobre solicitud de Revisión Administrativa[,] presentada por el señor Julio Santiago [d]e Alba, demandante en este caso, en la cual impugnó la determinación de la concesión de la variación por el Municipio [Autónomo] de San Juan. Dicha solicitud de revisión fue declarada sin lugar.

12) El 20 de mayo de 2022, el Tribunal de Apelaciones emitió una Sentencia en el caso KLRA202200187 sobre un recurso de revisión judicial instado por el señor Santiago [d]e Alba, demandante en este caso, contra la OGPe y el Municipio [Autónomo] de San Juan, mediante la cual el [F]oro apelativo intermedio revocó la Resolución

Administrativa recurrida y la Consulta de Construcción [N]úm. 2018-224771-CCO-004717. Dicha decisión se fundamentó en que el foro administrativo emitió tales determinaciones bajo el palio de[l] Reglamento Conjunto [de] 2020, el cual ya había sido decretado nulo por otros paneles del Tribunal de Apelaciones. No obstante, en dicha Sentencia no se discuten los méritos de los señalamientos de [Santiago de Alba] con respecto a las variaciones que dicha parte objetó en el trámite administrativo.

13) Dicha Sentencia no fue recurrida y al presente es final y firme.

14) Surge de un documento obtenido del *Single Business Portal* del Departamento de Desarrollo Económico y Comercio que se presentó una nueva Consulta de Construcción y que el proceso está en sus etapas iniciales.

15) El 7 de junio de 2023, el demandado Alberto Hernández [Rivera] suscribió una carta mediante la cual autorizó al Ing. Edgardo Oliver Polanco a tramitar la Consulta de Construcción. Además, también se incluyó evidencia de notificación a los vecinos y foto del letrero colocado informando sobre la solicitud de consulta de construcción.

16) El 27 de junio de 2023, la parte demandante Julio Santiago de Alba presentó una *Solicitud de intervención* en el [C]aso [N]úm. 2018-234771-CCO-012706 ante la Oficina de Permisos del Municipio [Autónomo] de San Juan.

17) En dicha solicitud de intervención, [Santiago de Alba] hizo esencialmente los mismos señalamientos que había hecho anteriormente en contra de la consulta de construcción y de las variaciones solicitadas por [Hernández Rivera]. Además, estos señalamientos están relacionados con las estructuras en la propiedad de [Hernández Rivera] que son objeto del recurso interdictal de epígrafe.

18) [Hernández Rivera] se allanó a demoler la estructura accesoria en el patio posterior.[8]

El foro primario concluyó que Santiago de Alba no logró demostrar que procedía expedir un *injunction* estatutario para ordenar la demolición de las estructuras en controversia, conforme a los criterios puntuales establecidos en el Artículo 14.1 de la Ley Núm. 161-2009, *supra*, así como las normas probatorias aplicables. Expresó que Santiago de Alba incumplió con el peso probatorio requerido para demostrar que las referidas estructuras en la propiedad de Hernández Rivera fueron construidas sin

---

[8] Anejo 1 del recurso, págs. 9-12.

contar con un permiso de construcción requerido por el ordenamiento jurídico vigente al momento en que fueron construidas, ya fuera porque nunca se obtuvo o fue revocado. Expresó que, tras celebrar la vista de *injunction*, no surgía de los hechos determinados cuándo exactamente tales estructuras fueron construidas, de modo que el tribunal pudiera estar en posición de determinar cuál era la norma aplicable en dicho momento. Sobre ello, particularizó que lo que surgía de las alegaciones de las partes era que Santiago de Alba obtuvo su propiedad en el año 1997, mientras que Hernández Rivera adquirió la suya en el año 1999, y que para esas fechas la ampliación del balcón en controversia ya había sido construida. Abundó que Santiago de Alba no ofreció prueba alguna para demostrar la naturaleza ilegal de tales construcciones, pues no quedó claro quién las realizó ni cuándo se hicieron. Por consiguiente, reiteró que Santiago de Alba no cumplió con el peso probatorio requerido para que se concediera el remedio interdictal solicitado.

De otro lado, el foro *a quo* señaló que el Tribunal Supremo de Puerto Rico había aclarado en *Martínez Fernández et al. v. OGP et al.*, supra, que, aun cuando el Reglamento Conjunto de 2019 y el Reglamento Conjunto de 2020 eran nulos, esa nulidad solo surtiría efecto prospectivo a partir de la certificación de esa *Opinión*. Indicó que dicho Foro también había aclarado que todo permiso que hubiera sido autorizado y expedido al amparo de los referidos Reglamentos, previo a la emisión de ese pronunciamiento, debía ser aceptado como legal.

A su vez, el foro juzgador especificó que se encontraban ante un procedimiento especial de *injunction* estatutario, el cual no estaba sujeto a las normas de jurisdicción primaria ni agotamiento de remedios administrativos propuestos por Hernández Rivera. Detalló que dicho procedimiento especial no desplazaba el procedimiento administrativo precisamente porque el *injunction* estatutario era un mecanismo provisional limitado que requería de una acción ulterior e independiente para adjudicar finalmente la controversia. Sobre tal asunto, concluyó que dicho remedio

provisional era el adecuado en ley para ordenar la demolición de unas obras de construcción realizadas hace muchos años y cuyo alcance estaba siendo ventilado de manera simultánea en el foro administrativo competente con la participación activa de ambas partes. No obstante, expresó que el alcance del dictamen que nos ocupa se limitaba a determinar únicamente la improcedencia del recurso de *injunction* estatutario en virtud de la Ley Núm. 161-2009, *supra*. En cuanto a ello, aclaró que no había entrado en los méritos del caso respecto a los planteamientos de Santiago de Alba sobre la procedencia de las variaciones solicitadas por Hernández Rivera, ni en cuanto a la validez que pudieran tener las determinaciones administrativas sobre tales asuntos en el procedimiento que se encontraba en curso.

Inconforme, el 14 de agosto de 2023, la parte apelante acudió ante esta Curia mediante el recurso de epígrafe y señaló los siguientes errores:

> Erró el Tribunal de Primera Instancia al dictar Sentencia desestimando y archivando la Solicitud de Injunction Estatutario en virtud del Artículo 14.1 de la Ley Núm. 161-2009, Ley de Permisos de Puerto Rico, presentada ante sí por la [p]arte [a]pelante.

> Erró el Tribunal de Primera Instancia al dictar Sentencia desestimando y archivando la Solicitud de Injunction Estatutario en virtud del Artículo 14.1 de la Ley Núm. 161-2009, Ley de Permisos de Puerto Rico, presentada ante sí por la [p]arte [a]pelante, pese a que de la propia Sentencia surge que el TPI reconoce que la [p]arte [a]pelada no cuenta con los permisos de construcción, y por consiguiente tampoco de uso.

> Erró el Tribunal de Primera Instancia al dictar Sentencia desestimando y archivando la Solicitud de Injunction Estatutario en virtud del Artículo 14.1 de la Ley Núm. 161-2009, Ley de Permisos de Puerto Rico, presentada ante sí por la [p]arte [a]pelante, pese a que de la propia Sentencia surge que el TPI reconoce que el Artículo 14.1 de la Ley de Permisos provee para que se ordene la demolición de una obra que fue construida sin contar con un permiso de construcción[,] "ya sea porque nunca se obtuvo o porque el mismo ha sido revocado".

En cumplimiento con nuestra *Resolución* del 17 de agosto de 2023, la parte apelada compareció mediante *Alegato* el 11 de septiembre del mismo año.

Con el beneficio de la comparecencia de las partes, procedemos a resolver.

**II**

**A**

La Ley Núm. 161-2009, conocida como la *Ley para la Reforma del Proceso de Permisos de Puerto Rico*, según enmendada, 23 LPRA sec. 9011 *et seq.* (Ley Núm. 161-2009), se promulgó con el propósito de insertar en nuestro esquema estatutario el marco legal y administrativo que rige los procesos de solicitud, evaluación, concesión y denegación de permisos por el Gobierno de Puerto Rico. *Horizon v. Jta. Revisora, RA Holdings*, 191 DPR 228, 236 (2014). La referida disposición tiene como objetivo la transformación del sistema de permisos en nuestra jurisdicción, de modo que resulte en uno más transparente, ágil, confiable y eficiente. Exposición de Motivos de la Ley Núm. 161-2009, *supra*.

A su vez, la Ley Núm. 161-2009, *supra*, incorpora una estructura para la evaluación y otorgamiento de permisos afín con las leyes y reglamentos aplicables que propende a lograr un balance entre el desarrollo económico, la protección de los recursos naturales y la protección del derecho al disfrute de la propiedad. Exposición de Motivos de la Ley Núm. 161-2009, *supra.* Asimismo, mediante dicho estatuto se creó la Oficina de Gerencia de Permisos (OGPe), organismo gubernamental adscrito a la Junta de Planificación, a quien se le confirió jurisdicción de evaluar, conceder y/o denegar determinaciones finales y permisos relacionados al desarrollo y uso de terrenos en Puerto Rico. 23 LPRA sec. 9018.

En lo aquí atinente, el Artículo 14.1 de la Ley Núm. 161-2009, 23 LPRA sec. 9024*,* regula lo referente a los recursos extraordinarios para solicitar la revocación de algún permiso, la paralización de obras o usos no autorizados y la democión de obras de construcción. En particular, dicho articulado lee como siguiente:

La Junta de Planificación, así como cualquier entidad gubernamental concernida, Municipio Autónomo con [j]erarquía de la I a la V o cualquier otra dependencia o instrumentalidad del Gobierno de Puerto Rico en representación del interés público o una persona privada, natural o jurídica, que tenga un interés propietario o personal que podría verse adversamente afectado, podrá presentar una acción de injunction, mandamus, sentencia declaratoria, o cualquier otra acción adecuada para solicitar: (1) la revocación de un permiso otorgado, cuya solicitud se haya hecho utilizando información incorrecta o falsa; (2) la paralización de una obra iniciada sin contar con las autorizaciones y permisos correspondientes, o incumpliendo con las disposiciones y condiciones del permiso otorgado; (3) la paralización de un uso no autorizado; (4) la demolición de obras construidas, que al momento de la presentación del recurso y al momento de adjudicar el mismo no cuenten con permiso de construcción, ya sea porque nunca se obtuvo o porque el mismo ha sido revocado.

Indistintamente de haberse presentado una querella administrativa ante la Junta de Planificación, entidad gubernamental concernida, Municipio Autónomo con [j]erarquía de la I a la V o cualquier otra dependencia o instrumentalidad del Gobierno de Puerto Rico, alegando los mismos hechos, una parte adversamente afectada podrá presentar un recurso extraordinario en el Tribunal de Primera Instancia. Una vez habiéndose presentado el recurso extraordinario al amparo de esta sección, la agencia administrativa perderá jurisdicción automáticamente sobre la querella y cualquier actuación que llevare a cabo con respecto a la misma será considerada ultra vires.

El Tribunal de Primera Instancia deberá celebrar vista dentro de un término no mayor de diez (10) días naturales desde la presentación del recurso y deberá dictar sentencia en un término no mayor de veinte (20) días naturales desde la celebración de la vista.

En aquellos casos en los cuales se solicite la paralización de una obra o uso, de ser la misma ordenada por el tribunal, se circunscribirá única y exclusivamente a aquellos permisos, obras o uso impugnado, mas no a ningún otro que se lleve a cabo en la propiedad y que cuente con un permiso o autorización debidamente expedida.

El tribunal impondrá honorarios de abogados [y abogadas] contra la parte que presenta el recurso bajo esta sección si su petición resulta carente de mérito y razonabilidad o se presenta con el fin de paralizar una obra o permiso sin fundamento en ley. Los honorarios de abogados [y abogadas] bajo esta sección será una suma igual a los honorarios que las otras partes asumieron para oponerse a la petición judicial. En el caso que el tribunal entienda que no es aplicable la presente imposición de honorarios de abogados [y abogadas], tendrá que así explicarlo en su dictamen con los fundamentos para ello. Las revisiones de los dictámenes bajo esta sección ante el Tribunal de Apelaciones se remitirán a los paneles especializados creados mediante este capítulo y dicho foro tendrá 60 días para resolver el recurso de revisión desde la presentación del mismo.

El antedicho artículo establece un mecanismo interdictal extraordinario de carácter estatutario y sumario "limitado a la obtención de órdenes para la paralización inmediata, provisional o permanente de usos contrarios a la ley". *A.R.Pe. v. Rivera,* 159 DPR 429, 443-444 (2003). (Énfasis omitido). Dada su naturaleza, el *injunction* estatutario es independiente del *injunction* tradicional y, en consecuencia, generalmente exento de las exigencias legales que rigen a este. *Next Step Medical v. Bromedicon et al.,* 190 DPR 474 (2014). La doctrina interpretativa reconoce que los requisitos para la ejecución del *injunction* tradicional son más rigurosos que los aplicables a aquel de índole estatutario. *Íd.* Ello obedece a que, en esencia, el interdicto tradicional se adoptó del sistema de equidad inglés para disponer de situaciones para cuya atención no existe remedio adecuado en ley. *Íd.*; *A.R.Pe. v. Rivera,* supra.

Por su parte, el *injunction* estatutario tiene su origen en un mandato legislativo expreso. *A.R.Pe. v. Rivera*, supra. De ahí que, contrario al interdicto tradicional, su concesión "requiere un tratamiento especial, enmarcado en un escrutinio judicial más acotado". *Next Step Medical v. Bromedicon et al.*, supra, pág. 497. Así, a tenor con la doctrina vigente, al interponerse una petición de *injunction* de esta naturaleza, "[no] se requiere alegación ni prueba de daños irreparables, [sino] s[o]lo la determinación de que [la parte] demandad[a] ha violado las disposiciones de la ley". *A.R.Pe. v. Rivera*, supra, pág. 444. (Énfasis omitido). Por igual, y en el contexto específico del empleo del mecanismo interdictal establecido en el Artículo 14.1 de la Ley Núm. 161-2009, *supra*, **toda persona legitimada para valerse del mismo deberá establecer ante el tribunal competente lo siguiente: (1) que existe una ley o reglamento que regula el uso o actividad denunciada; y (2) que la persona o personas señaladas se encuentran realizando un uso o actividad en violación a esa ley o reglamento**. *A.R.Pe. v. Rivera*, supra, pág. 445.

**B**

Al revisar una determinación de un foro de menor jerarquía, los tribunales revisores tenemos la tarea principal de auscultar si se aplicó correctamente el derecho a los hechos particulares del caso. *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 770 (2013). Como regla general, los foros apelativos no tenemos facultad para sustituir las determinaciones de hechos del tribunal de instancia con nuestras propias apreciaciones. *Banco Popular de Puerto Rico v. Gómez Alayón y otros*, 2023 TSPR 145, resuelto el 19 de diciembre de 2023; *Dávila Nieves v. Meléndez Marín*, supra, pág. 771; *Serrano Muñoz v. Auxilio Mutuo*, 171 DPR 717, 741 (2007). De manera que, si la actuación del tribunal no está desprovista de base razonable, ni perjudica los derechos sustanciales de una parte, debe prevalecer el criterio del juez de instancia a quien corresponde la dirección del proceso. *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414 (2013); *Sierra v. Tribunal Superior*, 81 DPR 554, 572 (1959).

Sin embargo, la norma de deferencia esbozada encuentra su excepción y cede cuando la parte promovente demuestra que hubo un craso abuso de discreción, prejuicio, error manifiesto o parcialidad. *Banco Popular de Puerto Rico v. Gómez Alayón y otros*, supra; *Trans-Oceanic Life Ins. v. Oracle Corp.*, 184 DPR 689 (2012). Además, se requiere que nuestra intervención en esta etapa evite un perjuicio sustancial. *Rivera et al. v. Arcos Dorados et al.*, 2023 TSPR 65, 212 DPR ___ (2023); *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986).

Por *discreción* se entiende el "tener poder para decidir en una forma u otra, esto es, para escoger entre uno o varios cursos de acción". *García v. Asociación*, 165 DPR 311, 321 (2005), citando a *Pueblo v. Ortega Santiago*, 125 DPR 203, 211 (1990). No obstante, "el adecuado ejercicio de la discreción está inexorable e indefectiblemente atado al concepto de la razonabilidad". *Íd.* A esos efectos, el Tribunal Supremo de Puerto Rico ha indicado cuáles son situaciones que constituyen un abuso de discreción, a saber:

> [C]uando el juez, en la decisión que emite, no toma en cuenta e ignora, sin fundamento para ello, un hecho material importante que no podía ser pasado por alto; cuando por el contrario el juez, sin justificación y fundamento alguno para ello, le concede gran peso y valor a un hecho irrelevante e inmaterial y basa su decisión exclusivamente en el mismo; o cuando, no obstante considerar y tomar en cuenta todos los hechos materiales e importantes y descartar los irrelevantes, el juez livianamente sopesa y calibra los mismos. *Ramírez v. Policía de P.R.*, 158 DPR 320, 340-341 (2002), citando a *Pueblo v. Ortega Santiago*, supra, págs. 211-212. Véase, además, *Banco Popular de Puerto Rico v. Gómez Alayón y otros*, supra.

Así, pues, la discreción no implica que los tribunales puedan actuar de una forma u otra en abstracción del resto del derecho. *Rivera et al. v. Arcos Dorados et al.*, supra. En otras palabras, la discreción no opera en un vacío y tampoco puede ser en "función al antojo o voluntad de uno, sin tasa ni limitación alguna". *Banco Popular de Puerto Rico v. Gómez Alayón y otros*, supra, citando a *SLG Zapata-Rivera v. J.F. Montalvo*, supra.

Esbozada la norma jurídica, procedemos a aplicarla al recurso ante nos.

**III**

La parte apelante sostiene en su primer señalamiento de error que el Tribunal de Primera Instancia incidió al dictar *Sentencia* desestimando y archivando la solicitud de *injunction* estatutario en virtud del Artículo 14.1 de la Ley Núm. 161-2009, *supra*, promovida por esta. Como segundo señalamiento de error, plantea que el foro primario erró al desestimar y archivar la acción de epígrafe, a pesar de que dicho foro reconoció que la parte apelada no cuenta con los permisos de construcción y de uso correspondientes. Además, en su tercer y último señalamiento de error, argumenta que el foro *a quo* incidió al dictar la determinación apelada, toda vez que el propio foro sentenciador también reconoció que el Artículo 14.1 de la Ley Núm. 161-2009, *supra*, provee para que se ordene la demolición de una obra que fue construida sin contar con un permiso para ello, ya sea porque nunca se obtuvo o porque el mismo ha sido revocado. Por estar relacionados entre sí, discutiremos los errores señalados en conjunto.

Un examen sosegado de la evidencia contenida en el expediente que nos ocupa nos mueve a concluir que, contrario a lo propuesto por la parte apelante, el Tribunal de Primera Instancia no se apartó de los límites legales impuestos al ejercicio de sus facultades para disponer de la presente acción. A nuestro juicio, los documentos que tuvimos ante nos, conjuntamente con las disposiciones legales y jurisprudenciales atinentes a la controversia que atendemos, evidencian que no medió un error de derecho atribuible a la sala sentenciadora, ello en cuanto a la interpretación y aplicación de la norma al caso de autos. Nos explicamos.

A tenor con la normativa previamente esbozada, un interdicto estatutario, como norma general, está exento de las exigencias propias a la concesión de un interdicto tradicional, toda vez que su origen es uno dispuesto por mandato de ley. Así, en su adjudicación, el escrutinio judicial pertinente debe ceñirse a la letra del estatuto que lo crea, sin que consideraciones exógenas cobren preeminencia sobre la misma. De este modo, únicamente resulta relevante establecer que se han transgredido los límites de ley para los cuales dicho mecanismo se impone como remedio, sin que sea necesario alegar ni demostrar la ocurrencia de daños. En el caso particular del *injunction* estatutario contenido en el Artículo 14.1 de la Ley Núm. 161-2009, *supra*, solo debe demostrarse, por parte de una persona con interés propietario o personal, que una ley o reglamento que regula determinada actividad o uso ha sido transgredida, y que tal conducta es atribuible a la persona compelida a la acción.

De un análisis de las alegaciones de la parte apelante, del tracto procesal de la controversia y de los documentos que obran en el expediente, no se puede concluir que han mediado las circunstancias específicas que permitan revocar el dictamen apelado. En el caso de autos, quedó demostrado que, cuando ambas partes adquirieron sus respectivas propiedades, para los años 1997 y 1999, la construcción en controversia ya estaba construida. El apelante no demostró ante el foro sentenciador cuándo se construyó la obra en cuestión. Al fallar en establecer

mínimamente la fecha de construcción de la obra aquí impugnada, el tribunal de instancia no se encontraba en posición de identificar propiamente cuál era la ley o el reglamento aplicable al momento de la presunta conducta ilegal. Ciertamente, el peso de la prueba recae sobre el apelante, quien debía demostrar la existencia de una ley o reglamento particular que regula el uso o actividad denunciada y que el aquí apelado se encuentra realizando un uso o actividad en violación a esa ley o reglamento. Para ello, es necesario establecer la fecha en que se llevó a cabo la acción impugnada, lo cual no ocurrió en el caso de autos, incumpliendo así con los requisitos dispuestos en el Artículo 14.1 de la Ley Núm. 161-2009, *supra.*

En consideración al derecho aplicable previamente expuesto, y al evaluar la totalidad del expediente ante nos, habiendo el apelante incumplido con la carga probatoria específicamente establecida para dirimir un *injunction* estatutario a tenor con el Artículo 14.1 de la Ley Núm. 161-2009, *supra*, determinamos que el Tribunal de Primera Instancia actuó correctamente y no incidió en su proceder al desestimar y archivar la petición presentada por el apelante. En consecuencia, nos resulta forzoso concluir que los errores imputados por la parte apelante no se cometieron. Por lo tanto, confirmamos la *Sentencia* apelada.

**IV**

Por las razones que anteceden, confirmamos el dictamen apelado.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones